SZABO, APPELLEE, *v.* MODERN WOODMEN OF AMERICA, APPELLANT.

(Decided May 10, 1937.)

*Mr. Joseph G. Gluck* and *Mr. M. M. Garfinkel,* for appellee.

*Messrs. Taber & Daniells,* for appellant.

LLOYD, J.   The defendant, Modern Woodmen of America, a fraternal benefit society, appeals to this court on questions of law from an adverse judgment of $1,000 plus interest entered on a verdict in favor of Helen Szabo who was the beneficiary of a benefit certificate issued by the society to Andy Falucskay, on February 1, 1931, on which date he was "adopted" as a member thereof.

The errors assigned by the society are the refusal of the trial court to direct a verdict in its favor and also the subsequent refusal of the court to render judgment in its favor notwithstanding the verdict. The certificate issued to Falucskay recites, "that the contract between the society and said member consists of (1) the articles of association of this society, (2) this benefit certificate, (3) the application for membership signed by the member, and (4) the by-laws of the society, with all present and subsequent amendments to each thereof."

Section 43B of the by-laws provides:

"The liability of this society for the payment of benefits upon the death of a beneficial member shall not begin until the applicant shall have been duly recommended by the camp physician and the application approved by the state or provincial medical director, and the supreme directors, nor until the applicant shall have taken the obligations prescribed in the ritual and shall have been adopted and shall have made the payments prescribed in Section 24 hereof, and shall have performed all acts and complied with all the requirements prescribed by these by-laws; nor until all acts herein prescribed for the local camp shall have been fully complied with by it; nor until a benefit certificate is issued as provided in Section 32 hereof; provided, however, that the applicant must be in sound health when adopted and when said benefit certificate is issued."

Among others contained in his signed application are questions and answers in regard to whether he had theretofore been in any hospital as a patient, had undergone any surgical operation, been treated by any one for any personal ailment or had ever been treated for or been advised or informed that he ever had a tumor. The application records all such questions to

have been answered negatively by Falucskay. The application contained the following:

"I have verified each of the foregoing answers and statements, from 1 to 29, both inclusive, adopt them as my own, whether written by me or not, and declare and warrant that they are full, complete and literally true, and I agree that the exact literal truth of each shall be a condition precedent to any binding contract issued upon the faith of said answers and statements. I further agree that no statements, promises, knowledge or information had, made or given by or to the person soliciting, taking or writing this application, or by or to any person, shall be binding upon the society or in any manner affect its rights, unless such statements, promises, knowledge, or information be reduced to writing and presented to the head offices of the society at Rock Island, Illinois, at or before the time any benefit certificate shall be issued hereon, and I further agree that if any answer or statement in this application is not literally true, or if I shall fail to comply with and conform to any and all of the by-laws of the said Modern Woodmen of America, whether now in force or hereafter adopted, that all my benefit certificates shall be void. And I waive for myself and beneficiary, or beneficiaries, all claim of benefit under this application until I shall be regularly adopted in accordance with the ritual of this society, and shall make the payments as required by its by-laws, and the benefit certificates applied for shall have been issued herein by the head clerk, all while I am in sound health and all in pursuance of the by-laws of the society."

Accompanying this application was a signed "Special Report of Camp Physician" wherein it was stated that he had known the applicant "1 hr." and after a series of questions asked and favorably answered, he answered "yes" to the following ques-

tion: "From the applicant's personal habits, present physical and mental condition and ancestry, do you consider the risk first class?" And "I do" to this question: "Do you, from your examination of this applicant and from all other facts within your knowledge believe that the applicant will outlive the full period of expectancy according to the Modern Woodmen of America table of mortality and recommend that said applicant be admitted to beneficial membership?"

The plaintiff appellee produced evidence that the decedent could not understandingly read English, that the completed application was not read to him, and that the only questions asked of him as to his prior condition of health were whether he had been sick, which he answered affirmatively, and that whatever the soliciting agent of the society had noted otherwise on the application was not elicited from Falucskay and therefore there was and could not have been any misrepresentation by him as to his condition, and it is claimed that the "Report of the Camp Physician" with the testimony of lay witnesses as to the decedent appearing to have been in sound and virile health at the date of his application and of the delivery to him of the benefit certificate, raised a factual issue for the jury to decide, and that the jury having decided this issue affirmatively, its decision is conclusive.

The only substantial and believable evidence, however, indisputably discloses that on December 16, 1930, Falucskay, at his request, was examined by a physician who found that "he had a mass in the region of the left paratoid gland, sub-maxillary gland, tumor at the angle of the left jaw." Later, upon further examination, this physician found fluid in the "mass" which, being drawn out with a syringe and examined, was found to contain blood. On December 22, 1930, a

radiograph was taken which disclosed positively the existence of a tumor; a surgical operation was advised, and on January 14, 1931, was performed at Toledo Hospital. All of the tumor could not be removed "because it was malignant; in other words, a cancer."

The operating physician attended him professionally until his death on July 5, 1931. Another physician, whose assistant took the radiograph, first saw Falucskay on January 15 at Toledo Hospital and diagnosed his then condition as a "cancer of the salivary gland, one type of cancer." This physician gave him X-ray treatments at intervals thereafter until the 23rd day of March, 1931, for which purpose Falucskay went to the hospital.

The certificate contains the following express condition, signed by Falucskay:

"I have read and hereby accept this benefit certificate and agree to all the conditions therein contained and referred to. I hereby warrant that I was in sound health when adopted and throughout the aforesaid day this benefit certificate was issued and I agree and understand that this certificate is not binding upon the society, unless I was in sound health as aforesaid."

To recapitulate the undisputed facts:

On December 16, 1930, Falucskay consulted a physician, who then found evidence of a tumor;

On December 22, an X-ray picture was taken, confirming the previous diagnosis, and a surgical operation was advised;

On January 14, 1931, an operation was performed, disclosing positively that the tumor was malignant and of a nature that it could not all be removed;

On January 22, 1931, Falucskay signed his application for membership and insurance in the appellant society which, with the report of the camp physician, was forwarded to the society;

On February 1, 1931, the benefit certificate was delivered to Falucskay;

On July 5, 1931, Falucskay died.

We are concerned not with whether there were innocent or intentional misstatements made by Falucskay in his application, or what was thought by any one to have been his condition of health prior to the issuance of the certificate and its delivery to him, but with what in fact was his physical condition. If he was then in sound health, the verdict and judgment are correct. If not, then the verdict and judgment are patently wrong.

The only conclusion to be deduced from the evidence is that he was of unsound health; that he had not only theretofore consulted a physician but that he had been in a hospital, that a surgical operation had been performed for the removal of a tumor, that the tumor was cancerous in nature, and caused his death.

The requested directed verdict should have been entered and, not being done, the motion for judgment notwithstanding the verdict should have been granted.

Judgment of the Court of Common Pleas is reversed and final judgment rendered in favor of appellant.

*Judgment reversed.*

CARPENTER and OVERMYER, JJ., concur.